1
2
3
4

**UNITED STATES DISTRICT COURT**

5

**NORTHERN DISTRICT OF CALIFORNIA**

6

**SAN JOSE DIVISION**

7
8

GOOGLE LLC,

Case No. 25-cv-04984-BLF

9

Plaintiff,

10

v.

**ORDER GRANTING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AND DENYING DEFENDANTS' MOTION TO DISMISS**

11

LATAM AIRLINES GROUP S.A. INC., et al.,

12

Defendants.

[Re: ECF Nos. 13, 31]

13
14
15

Before the Court are two motions. The first is Plaintiff Google LLC's ("Plaintiff" or

16

"Google") Motion for a Preliminary Injunction, ECF No. 13 ("P.I. Mot."). The second is

17

Defendants LATAM Airlines Group S.A. Inc. and Tam Linhas Aereas S.A.'s (collectively,

18

"Defendants" or "LATAM") Motion to Dismiss, ECF No. 31 ("MTD"). Each motion was

19

opposed, *see* ECF Nos. 30 ("P.I. Opp."), 33 ("MTD Opp."), and the Parties filed replies in support

20

of their respective motions, *see* ECF Nos. 32 ("P.I. Reply"), 38 ("MTD Reply"). The Court held

21

simultaneous hearings on the motions on August 28, 2025. ECF No. 40. On August 29, 2025, the

22

Court issued a Provisional Order Granting the Motion for Preliminary Injunction. ECF No. 43. For

23

the reasons set forth below and stated on the record by the Court at the August 28, 2025 hearing,

24

the motion for preliminary injunction is GRANTED and the motion to dismiss is DENIED.

25

**I.    BACKGROUND**

26

On June 28, 2018, Raymond Moreira, a United States citizen residing in Florida, uploaded

27

two videos to the YouTube channel "Ingles Marcos." ECF No. 1 ("Compl.") ¶ 12; ECF No. 13-1,

28

Declaration of Nadia Woolnough in Support of Google LLC's Motion for a Preliminary Injunction

United States District Court
Northern District of California

1   ("Woolnough Decl.") ¶¶ 8, 10.[1]

2       The videos are titled "Latam airlines abuso sexual meneno de 6 anos" and "Latam airlines

3   abuso sexual de menio de 6 anos." Compl. ¶ 12; Woolnough Decl. ¶ 9.[2] These titles both translate

4   roughly to "Latam Airlines sexual abuse of a child under 6 years old." ECF No. 13-2, Declaration

5   of Ian. F. Sprague in Support of Google LLC's Motion for a Preliminary Injunction ("Sprague

6   Decl."), Exs. M, N.

7       In these videos, Mr. Moreira interviews his six-year-old son, who describes alleged sexual

8   abuse he experienced at the hands of one of LATAM's employees while traveling as an

9   unaccompanied minor from Brazil to Florida on May 3, 2018, to May 4, 2018. *See* Compl. ¶ 12;

10   Woolnough Decl. ¶ 10, Exs. D–F; Sprague Decl. Exs. J, K.

11       In July 2018, TAM (LATAM's wholly owned Brazilian subsidiary) sued GBIL ("Google

12   Brasil") (Google's wholly owned Brazilian subsidiary) in Brazil. Compl. ¶ 13; Woolnough Decl.

13   ¶ 11. TAM obtained an order and injunction, which, among other things, required Google Brasil to

14   remove Mr. Moreira's videos because they are defamatory under Brazilian law. Compl. ¶¶ 13–14;

15   Woolnough Decl. Ex. G. In June 2019, the Court of Justice of São Paulo denied TAM's request to

16   globalize the injunction, instead directing Google Brasil to block access to the videos only in

17   Brazil. Compl. ¶ 15; Woolnough Decl. Ex. K.

18       Still seeking a global injunction, TAM appealed. Compl. ¶¶ 13, 17–18; Woolnough Decl.

19   Exs. L, M. In orders from the Superior Court of Justice in Brazil dated December 3, 2024, March

20   21, 2025, and June 23, 2025, (collectively, the "Global Removal Order"), the Superior Court of

21   Justice reversed the decisions of the lower courts and globalized the removal order, making it

22   applicable worldwide. Compl. ¶ 18; Woolnough Decl. Exs M, N.

23       Google has restricted access to the videos in Brazil. Compl. ¶ 21; Woolnough Decl. ¶ 17.

24   But it now seeks a declaration that the Global Removal Order violates United States law and an

25   injunction barring LATAM from seeking to enforce the order in the United States. Compl. ¶ 22.

26

27   —————————————

[1] YouTube is a video and content-sharing platform owned by Google. Compl. ¶ 1.

28   [2] Available at https://www.youtube.com/watch?v=DJzYDz0rBTM; https://www.youtube.com/watch?v=FbcSyq-NQHI.

1    Google brings the present action and asserts five causes of action: (1) a claim under the

2    Communications Decency Act, 47 U.S.C. § 230; (2) a claim under the First Amendment; (3) a

3    claim for violation of the SPEECH Act, 28 U.S.C. §§ 4101–4105; (4) a claim for trespass upon

4    international comity; and (5) a claim for intentional interference with contractual relations. *Id.*

5    ¶¶ 23–62.

6    **II.    LEGAL STANDARD**

7    **A.  Motion to Dismiss**

8    "A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a

9    claim upon which relief can be granted 'tests the legal sufficiency of a claim.'" *Conservation*

10    *Force v. Salazar*, 646 F.3d 1240, 1241–42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d

11    729, 732 (9th Cir. 2001)). When determining whether a claim has been stated, the Court accepts as

12    true all well-pled factual allegations and construes them in the light most favorable to the plaintiff.

13    *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011). However, the Court

14    need not "accept as true allegations that contradict matters properly subject to judicial notice" or

15    "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable

16    inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citation omitted).

17    While a complaint need not contain detailed factual allegations, it "must contain sufficient factual

18    matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*,

19    556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

20    **B.  Preliminary Injunction**

21    To determine the proper legal standard for the preliminary injunction in this case, the Court

22    first considers what type of injunction Google is requesting. To the extent Google seeks an

23    injunction prohibiting LATAM from engaging in litigation seeking removal of the videos in the

24    United States, it requests an anti-suit injunction. *See* ECF No. 13-3 ("Google's First Proposed

25    Order"); *see also E. & J. Gallo Winery v. Andina Licores S.A.*, 446 F.3d 984, 990 (9th Cir. 2006).

26    LATAM argues that if what Google seeks is an anti-suit injunction, it has not made a sufficient

27    showing under the test laid out in *Gallo*. P.I. Opp. at 11–12.

28    On reply and at the hearing, Google sharpened its request for relief. Google requests only

United States District Court
Northern District of California

3

United States District Court
Northern District of California

that LATAM be enjoined from any conduct in the United States or Brazil to *enforce* the Global Removal Order in the United States. *See* P.I. Reply at 3–4; ECF No. 42 ("Google's Second Proposed Order"). Therefore, the Court will analyze Google's request for an anti-enforcement injunction under the traditional *Winter* factors. *See Google LLC v. NAO Tsargrad Media*, No. 5:24-cv-05423-EJD, 2025 WL 964692, at *3 (N.D. Cal. Mar. 31, 2025), *appeal filed*, No. 25-2792 (9th Cir. Apr. 30, 2025) (applying the *Winter* test to a request for an anti-enforcement injunction).

Under the *Winter* factors, "[a] plaintiff seeking a preliminary injunction must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). "[I]f a plaintiff can only show that there are 'serious questions going to the merits'—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the 'balance of hardships tips *sharply* in the plaintiff's favor,' and the other two *Winter* factors are satisfied." *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013) (quoting *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011)).

## III.   DISCUSSION

### A.   Motion to Dismiss

The Court begins with LATAM's motion to dismiss. LATAM seeks to dismiss only one of the five claims: the claim for intentional interference with contractual relations. MTD at 5. LATAM argues that (1) Google has not pled an independently wrongful act, (2) LATAM is immune from liability under Cal. Civ. Code § 47(b) ("§ 47(b)"), and (3) Google has not adequately alleged an actual breach or disruption of the contract or resulting harm. *See id.* Google responds that it has adequately pled each of the elements and argues that the claim is not barred by California's litigation privilege. *See* MTD Opp. at 2.

In California, a claim of intentional interference with contractual relations requires "(1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting

1    damage." *hiQ Labs, Inc. v. LinkedIn Corp.*, 31 F.4th 1180, 1191 (9th Cir. 2022) (quoting *Pac. Gas*

2    *& Elec. Co. v. Bear Stearns & Co.*, 50 Cal. 3d 1118, 1126 (1990)). Where the contract is at-will, a

3    plaintiff must also plead an independently wrongful act. *Ixchel Pharma, LLC v. Biogen, Inc.*, 9

4    Cal. 5th 1130, 1148 (2020).

5            **1.    Independent Wrongfulness**

6            LATAM argues the YouTube Terms of Service is an at-will contract because it may be

7    terminated by the user at any time. MTD at 6 (*citing* Compl. Ex. A). LATAM argues that Google

8    must therefore plead an independently wrongful act. *Id.* at 6–7. But LATAM explains that "[t]here

9    is nothing independently wrongful about enforcing Brazilian rights . . . through the Brazilian

10   courts against another Brazilian company." *Id.*

11           Google responds that even assuming it must plead independent wrongfulness, LATAM

12   admits to having committed an independently wrongful act by conceding that the Global Removal

13   Order violates United States law. MTD Opp. at 5. Google does not contest that the YouTube

14   Terms of Service is an at-will contract, nor does Google argue that it need not plead an

15   independently wrongful act. *See id.* at 5. The Court assumes without deciding (1) that the

16   YouTube Terms of Service constitutes an at-will contract and (2) Google is therefore required to

17   plead independent wrongfulness.

18           As a threshold matter, the Court finds that Google has adequately pled claims under the

19   Communications Decency Act, the SPEECH Act, and international comity. *See* Compl. ¶¶ 23–31,

20   42–56. The Court therefore agrees with Google that LATAM's seven-year-long campaign to

21   obtain a global removal order is independently wrongful because, under the facts alleged, the order

22   LATAM has sought violates United States Law. *See Korea Supply Co. v. Lockheed Martin Corp.*,

23   29 Cal. 4th 1134, 1159 (2003) ("[A]n act is independently wrongful if it is unlawful, that is, if it is

24   proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal

25   standard."). As a result, the Court finds that Google has sufficiently pled an independently

26   wrongful act.

27           **2.    Litigation Privilege Under California Law**

28           LATAM argues that even if Google can successfully state a claim for each of the elements

of its intentional interference claim, its conduct is protected by California's litigation privilege. MTD at 7. Google argues that the litigation privilege does not apply because it does not protect litigation that is just one step in an overall tortious course of conduct. MTD Opp. at 5.

The California litigation privilege "applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action." *Rusheen v. Cohen*, 37 Cal. 4th 1048, 1057 (2006) (internal citation omitted). The privilege attaches only to actions that are communicative and does not protect tortious courses of conduct. *Action Apartment Ass'n, Inc. v. City of Santa Monica*, 41 Cal. 4th 1232, 1248–49 (2007).

The Court finds that Google has pled sufficient facts to avoid the § 47(b) bar applying to the allegation that LATAM engaged in a course of conduct in pursuit of an injunction that violates United States law. This issue cannot be settled at this point, however. Additional briefing on a more developed record at summary judgment will be required for the Court to conclusively consider the issue.

### 3.    Actual Breach or Disruption and Resulting Harm

Finally, LATAM argues that Google does not allege any breach or additional burden in performing its contract with Mr. Moreira. MTD at 9. Google argues in response that the disruption and harm it alleges come in the form of Google being unable to enjoy the benefit of its bargain. MTD Opp. at 3. Google argues that forcing YouTube to remove content it has the right to host makes its contract with Mr. Moreira less valuable and will irreparably harm Google's utility as a platform and reputation as a forum for speech. *Id.* at 3.

"To state a claim for disruption of a contractual relation, the plaintiff need not show the defendant induced an actual or inevitable breach of the contract. It is sufficient to show the defendant's conduct made the plaintiff's performance, and inferentially enjoyment, under the contract more burdensome or costly." *Golden West Baseball Co. v. City of Anaheim*, 25 Cal. App. 4th 11, 51 (1994). A claim for intentional interference can flow from conduct that renders a contract less valuable. *See, e.g.*, *Infectolab Americas LLC v. ArminLabs GmbH*, No. 20-cv-03318-VKD, 2021 WL 1561627, at *4–5 (N.D. Cal. Apr. 21, 2021) (denying motion to dismiss a claim

United States District Court
Northern District of California

United States District Court
Northern District of California

1   of intentional interference where plaintiff alleged its contract became less valuable as a result of

2   defendant's conduct); *Signal Hill Serv., Inc. v. Macquarie Bank Ltd.*, No. CV 11-1539 MMM,

3   2013 WL 12244056, at *35 (C.D. Cal. June 12, 2013) ("California courts and commentators have

4   suggested that a claim for intentional interference is viable if the defendant's conduct renders the

5   contract less valuable to the plaintiff.").

6           While the Court agrees that Google has not alleged that its contract with Mr. Moreira was

7   breached, Google does allege that the Global Removal Order undermines YouTube's "right to host

8   the videos that Mr. Moreira posted" and that Google will suffer harm as a result. Compl. ¶¶ 60–62.

9   Accordingly, the Court finds that Google has sufficiently pled actual disruption and resulting

10  harm.

11          In sum, because under the facts alleged LATAM's conduct is not privileged and Google

12  has sufficiently pled all of the elements of intentional interference, the Court will deny LATAM's

13  motion to dismiss.

14      **B.    Motion for Preliminary Injunction**

15          **1.    Likelihood of Success on the Merits**

16          The Court now turns to LATAM's motion for a preliminary injunction. The first *Winter*

17  factor asks whether the Plaintiff is "likely to succeed on the merits" of his claims. *Winter*,

18  555 U.S. at 20. Google argues that the Global Removal Order is unenforceable in the United

19  States. P.I. Mot. at 6. Specifically, Google argues that LATAM has intentionally interfered with

20  Google's contract with Mr. Moreira. *Id.* at 7. Google also argues that the Global Removal Order

21  violates section 230 of the Communications Decency Act, the First Amendment, and the SPEECH

22  Act. *Id.* at 6–7. Finally, Google argues that the Order trespasses on international comity. *Id.* at 7.

23  In response, LATAM argues that Google is not likely to succeed on the merits of its tortious

24  contractual interference claim. P.I. Opp. at 5–11. LATAM does not otherwise contest that the

25  Global Removal Order is unenforceable in the United States on the basis of the four other claims.

26  *Id.* at 2.

27          **a.    Intentional Interference with Contractual Relations**

28          Google first argues that it is likely to prevail on its claim that LATAM is intentionally

interfering with its contractual relationship with Moreira. P.I. Mot. at 7–8. LATAM responds that Google's claim will fail because it has not alleged an independently wrongful act, actual breach or disruption of its contractual relationship, or resulting harm. P.I. Opp. at 5–6. LATAM further argues that it is immune from liability under § 47(b). *Id.* The Court notes that the parties' arguments closely track those made in connection with the motion to dismiss.

As explained above, a claim of intentional interference with contractual relations requires "(1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." *hiQ Labs*, 31 F.4th at 1188 (quoting *Pac. Gas & Elec. Co.*, 50 Cal. 3d at 1126).

It is uncontested that Google has a valid contract with Mr. Moreira: the YouTube Terms of Service. *See* Woolnough Decl. ¶ 8. Google argues that LATAM must have been aware of the contract by itself accepting the YouTube Terms of Service, P.I. Mot. at 7 (*citing* Woolnough Decl. ¶ 5), which LATAM does not dispute. LATAM likewise does not contest that seeking the Global Removal Order was an intentional act.

### i.   Actual Breach or Disruption and Resulting Harm

With respect to actual breach or disruption of its contractual relationship, Google argues that it has been deprived of the benefit of its bargain with Mr. Moreira, namely the right to host and display Mr. Moreira's videos on its platform. P.I. Mot. at 8; P.I. Reply at 7. Google further argues that interference with this right will in turn burden YouTube's reputation and ability to serve its audience. P.I. Mot. at 8; P.I. Reply at 7. LATAM argues that Google has not alleged that its contract is in "jeopardy of termination" due to LATAM's conduct or otherwise alleged that its performance of the contract has been made more costly or difficult. P.I. Opp. at 9–10. LATAM also argues that, while Google reserves rights to remove content that violates the law "Google does not explain how a Brazilian order commanding Google to exercise the very rights it reserves in its Terms of Service constitutes a breach of the Terms of Service." *Id.* at 11.

As explained above, a claim for intentional interference can flow from conduct that undermines the value of a contract. *See Infectolab Americas*, 2021 WL 1561627, at *4–5. Google

avers that it will be "denied the benefit of its contract with Moreira" absent preliminary relief, which will in turn lead to the chilling of speech, harm to Google's goodwill and reputation, and interference with Google's mission to provide a forum for speech. P.I. Mot. at 8. In support of this argument, Google points to a declaration that states that the Global Removal Order (1) "inhibits YouTube's mission . . . to give everyone a voice and show them the world," (2) "undermines YouTube's goodwill and reputation as a place for users to speak freely and to freely access information," and (3) has the potential to "allow the least speech-friendly jurisdictions to control global access to content." Woolnough Decl. ¶¶ 21–23. The Court finds that the harms Google describes are amorphous. That makes the evidence here unlike the harm at issue in *EPEngine, Inc. v. Automattic Inc.*, No. 24-cv-06917-AMO, 2024 WL 5077610 (N.D. Cal. Dec. 10, 2024). There, the demonstrated "loss of goodwill and reputational harm" was paired with more detailed and concrete evidence with respect to the loss of customers and market share. *Id.* at *13. Not so here.

Accordingly, the Court finds that Google has not shown a likelihood of success on the merits with respect to the disruption and harm elements of its intentional interference claim. Because these are essential elements of the claim for intentional interference, the Court need not consider independent wrongfulness and litigation privilege.

### b. Section 230

Next, Google argues that it is likely to succeed on the merits of its claim under section 230 of the Communications Decency Act because this provision immunizes providers of interactive computer services from liability arising from content created by third parties. *See* P.I. Mot. at 8–11. LATAM does not contest this claim in its opposition.

Section 230 of the Communications Decency Act "immunizes providers of interactive computer services against liability arising from content created by third parties." *Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157, 1162 (9th Cir. 2008) (en banc) (footnote omitted). It states that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). Service providers may thus "perform some editing on user-generated content without thereby becoming liable for all defamatory or otherwise unlawful

9

United States District Court
Northern District of California

1  messages they didn't edit or delete." *Roommates.com*, 521 F.3d at 1163.

2      To qualify for section 230 immunity, Google must show that it is "(1) a provider or user of

3  an interactive computer service (2) whom a plaintiff seeks to treat[] . . . as a publisher or speaker

4  (3) of information provided by another information content provider." *Estate of Bride by and*

5  *through Bride v. Yolo Techs., Inc.*, 112 F.4th 1168, 1176 (9th Cir. 2024) (quoting *Barnes*

6  *v. Yahoo!, Inc.*, 570 F.3d 1096, 1100–01 (9th Cir. 2009)).

7      First, Google and YouTube "readily fall within" section 230's definition of an "interactive

8  computer service" because YouTube's videos are "information provided by another information

9  content provider." *Enhanced Athlete Inc. v. Google LLC*, 479 F. Supp. 3d 824, 829 (N.D. Cal.

10  2020); *see also* 47 U.S.C. § 230(c).

11      Second, Mr. Moreira "provides" the information, not Google. Mr. Moreira created and

12  posted the videos at issue on the YouTube platform. Woolnough Decl. ¶¶ 8–10, Exs. C–F. Thus,

13  Google does not "provide" the content under section 230.

14      Third, the Global Removal Order would hold Google liable as the "publisher or speaker"

15  of the information provided by Mr. Moreira. Woolnough Decl. Exs. M, N. In *Google LLC*

16  *v Equustek Solutions, Inc.*, the court held that a Canadian order requiring Google to take down

17  websites from its global search results "treats Google as a publisher because the order would

18  impose liability for failing to remove third-party content from its search results." No. 17-cv-

19  04207-EJD, 2017 WL 5000834, at *3 (N.D. Cal. Nov. 2, 2017). The Court finds that the *Equustek*

20  court's reasoning applies with full force here. *See also Barnes*, 570 F.3d at 1103 ("[R]emoving

21  content is something publishers do, and to impose liability on the basis of such conduct

22  necessarily involves treating the liable party as a publisher of the content it failed to remove.").

23      Accordingly, the Court finds Google meets the requirements for section 230 immunity and

24  is therefore likely to prevail on the merits of its section 230 argument.

25              **c.   SPEECH Act**

26      Google argues that any enforcement of the Global Removal Order in the United States

27  would violate the Speech Act. P.I. Mot. at 13. This claim is also uncontested.

28      Under the SPEECH ACT, a United States Court "shall not recognize or enforce a foreign

judgment for defamation" unless (1) it determines that the law applied by the foreign jurisdiction "provided at least as much protection for freedom of speech" as the First Amendment or (2) that the "party opposing . . . enforcement of that foreign judgment would have been found liable for defamation" by a United States Court applying the First Amendment. 28 U.S.C. § 4102(a)(1).

Google argues that Brazilian law is less protective of speech than either the First Amendment or section 230 and that it would not be found liable by a United States court enforcing the First Amendment. P.I. Mot. at 14.

Assuming they relate to matters of public concern, Mr. Moreira's videos cannot support a claim for defamation in the United States unless they were false and made with actual malice. *See New York Times Co. v. Sullivan*, 376 U.S. 254, 279–80 (1964); *Phila. Newspapers, Inc v. Hepps*, 475 U.S. 767, 776–77 (1896).  Under Brazilian law, a claim for defamation requires something less. Article 139 of the Brazilian Penal Code defines "defaming someone" as "imputing an act that is offensive to their reputation," and "[t]he truth exception is only permitted if the offended party is a public servant and the offense is related to the exercise of his/her duties." Sprague Decl. ¶ 17, Ex. O. Accordingly, Brazil's defamation standard is less protective of speech than is the First Amendment.

The Court also finds that Mr. Moreira would likely not be found liable for defamation under United States law. Google explains that the Global Removal Order is not predicated on a finding of falsity or malice. P.I. Mot. at 11. The Court agrees. *See* Woolnough Decl. Exs. G–N; Sprague Decl. Exs E–H. Thus, the record does not give rise to defamation under United States law. The Court therefore finds that Google is likely to prevail on the merits of its SPEECH Act claim.

### d.  International Comity

Google argues it is likely to prevail on the merits of its international comity claim because the Global Removal Order is contrary to United States and California Public Policy. P.I. Mot. at 15–16. LATAM likewise does not contest this claim.

There is no federal statute governing the recognition of foreign judgments in federal courts. *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1212 (9th Cir.

1    2006). Thus, "actions to recognize and enforce foreign judgments are generally governed by state

2    law." *Hakan Agro DMCC v. Van Son Serv. Agric. Co.*, No. 18-cv-04038-DMR, 2018 WL

3    6822639, at *2 (N.D. Cal. Oct. 1, 2018). To the extent the issue is whether the Global Removal

4    Order is enforceable in California, California law governs. *Yahoo!*, 433 F.3d at 1212.

5         California law provides that foreign judgments should not be recognized where "[t]he

6    judgment or the cause of action or claim for relief on which the judgment is based is repugnant to

7    the public policy of this state or of the United States." Cal. Civ. Proc. Code § 1716(c); *cf. In re*

8    *Stephanie M.*, 7 Cal. 4th 295, 314 (1994) ("The doctrine of comity prescribes that a court of this

9    nation recognize the judgment of a court of a foreign nation when the foreign court had proper

10   jurisdiction and enforcement does not prejudice the rights of United States citizens or violate

11   domestic public policy.").

12        Google argues that foreign judgments that are contrary to the First Amendment are "the

13   paradigmatic example" of an order that is "repugnant to United States law and policy." P.I. Mot.

14   at 16.

15        A "[s]imple inconsistency" between American law and a foreign order will "not render a

16   foreign judgment unenforceable by reason of repugnancy." *Naoko Ohno v. Yuko Yasuma*,

17   723 F.3d 984, 1003 (9th Cir. 2013). But where there are "stark differences between foreign and

18   domestic law," courts will decline to enforce foreign judgments. *Id.* A court in this district has

19   barred enforcement of a foreign injunction that required an internet company to block the access

20   of French users to a website. *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme,* 169

21   F. Supp. 2d 1181, 1184–85 (N.D. Cal. 2001)*, rev'd on other grounds*, 433 F.3d 1199, 1214 (9th

22   Cir. 2006). The court explained that the "content and viewpoint-based regulation" at issue "clearly

23   would be inconsistent with the First Amendment if mandated by a court in the United States." *Id.*

24   at 1192.

25        As explained above, the Global Removal Order is likely at odds with section 230 and the

26   SPEECH Act. As a result of these stark differences between foreign and United States law, the

27   Court concludes that Google is likely to prevail on the merits of its international comity claim.

28

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### e. First Amendment

Google also argues that it is likely to succeed on the merits of its Free Speech claim because content generated by third parties and posted on online platforms is protected speech under the First Amendment. *See* P.I. Mot. at 8–11. LATAM does not contest this claim. *See generally* P.I. Opp.

Google establishes that YouTube and the content at issue are protected under the First Amendment. *See Moody v. NetChoice, LLC*, 603 U.S. 707, 716 (2024) (explaining that online platforms are protected under the First Amendment when they create expressive products). But it is not clear that the First Amendment applies against a foreign private party acting abroad or as to a foreign judicial order. *See Prager Univ. v. Google LLC*, 951 F.3d 991, 996 (9th Cir. 2020) ("The Free Speech Clause of the First Amendment prohibits the government—not a private party—from abridging speech."). This issue was neither briefed by the Parties nor raised at the hearing. And because Google is likely to prevail on the merits of its section 230, SPEECH Act, and international comity claims, it is unnecessary to address Google's argument based on the First Amendment.

### 2. Irreparable Harm, Balance of Equities, and the Public Interest

Having found that Google is likely to succeed on the merits of three of its claims, the Court now considers whether it has established that it is likely to suffer irreparable harm absent preliminary relief. *Winter*, 555 U.S. at 22. Google argues that without relief, YouTube's "mission" of allowing users to share and view content will be undermined. P.I. Mot. at 17. Google also argues that the "litigation campaign is chilling the exercise of free speech" and causing harm to Google's reputation. *Id.* LATAM does not contest this prong of the *Winter* factors, nor does it claim it would be harmed if an injunction were to issue.

The Court finds that Google is harmed because the Global Removal Order likely restricts activity that is protected by section 230 and the SPEECH Act. The Global Removal Order is also likely at odds with international comity.

The Court turns now to the balance of equities and the public interest. *Winter*, 555 U.S. at 22. Google argues that the balance of equities favors relief because the Global Removal Order

United States District Court
Northern District of California

1  deprives it of the benefits of United States law and its relationships with users. P.I. Mot. at 19.

2  Google also argues that the public interest favors relief because it is not in the interest of the public

3  to allow violations of federal law. *Id.* at 20. LATAM likewise does not contest this issue.

4    The Court finds that the balance of equities and the public interest favor Google because

5  absent an injunction, there would be ongoing violations of federal law. *See Arizona Dream Act*

6  *Coal. v. Brewer*, 757 F.3d 1053, 1069 (9th Cir. 2014) ("[I]t is clear that it would not be equitable

7  or in the public's interest to allow the state . . . to violate the requirements of federal law . . . ."

8  (quoting *Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1029 (9th Cir. 2013) (first and second

9  alterations in original)).

10    An injunction would also serve the public interest. If enforced in the United States, the

11  Global Removal Order would undermine section 230, the SPEECH act, and international comity.

12  *See Equustek Sols.*, 2017 WL 5000834, at *3–4 (holding that an injunction barring enforcement of

13  a foreign order ordering the removal of websites from a list of search results was in the public

14  interest because it violated section 230).

15                                          * * *

16    For the above reasons, all four *Winter* factors favor issuing Google's requested injunction

17  preventing LATAM from enforcing the Global Removal Order in the United States from a United

18  States or Brazilian Court.

19        **3.    Security**

20    "The court may issue a preliminary injunction or a temporary restraining order only if the

21  movant gives security in an amount that the court considers proper to pay the costs and damages

22  sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ.

23  P. 65(c). The Ninth Circuit has "recognized that Rule 65(c) invests the district court with

24  discretion as to the amount of security required, if any." *Jorgensen v. Cassiday*, 320 F.3d 906, 919

25  (9th Cir. 2003) (internal quotation marks and citation omitted). "The district court may dispense

26  with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant

27  from enjoining his or her conduct." *Id.* Because the Court perceives no prejudice to LATAM

28  resulting from the preliminary injunction, the Court finds it appropriate to issue the preliminary

                                          14

1   injunction without requiring security.

2   **IV.    ORDER**

3          For the foregoing reasons, Defendants' Motion to Dismiss the claim for Intentional

4   Interference with Contractual Relations is DENIED, and Plaintiff's Motion for Preliminary

5   Injunction is GRANTED.

6          With respect to the Preliminary Injunction, the Court adopts the proposed language

7   submitted by Plaintiff and reviewed by Defendants. ECF. No. 42.

8          NOW THEREFORE, LATAM Airlines Group S.A. Inc. and Tam Linhas Aereas S.A. are

9   HEREBY ENJOINED FROM:

10      1.   Enforcing or in any way attempting to enforce the orders from the Superior Court of

11           Justice in Brazil dated December 3, 2024; March 21, 2025; and June 23, 2025, or any

12           subsequent orders issued by the Superior Court of Justice in Brazil in this dispute that

13           would affect the availability of the Testimonial Videos[3] in the United States (collectively,

14           the "Global Removal Order"), in any court in or of the United States of America;

15      2.   Enforcing or in any way attempting to enforce or seek penalties for any alleged failure to

16           comply with the Global Removal Order in any court in or of the Federative Republic of

17           Brazil in any manner that would affect the availability of the Testimonial Videos in the

18           United States.

19

20      **IT IS SO ORDERED.**

21

22   Dated: September 24, 2025

23                                                    _____

24                                                    BETH LABSON FREEMAN
                                                      United States District Judge

25

26

27   _____

28   [3] (1) https://www.youtube.com/watch?v=DJzYDz0rBTM;
        (2) https://www.youtube.com/watch?v=FbcSyq-NQHI

United States District Court
Northern District of California